Here first from Mr. Hensley. Good morning, Your Honors. You may please the court. Bryce Hensley on behalf of Plaintiff Appellant Desmond Lewis. Your Honors, the District Court's judgment against Desmond Lewis, its summary judgment, must be reversed in the case remanded for trial. Here the District Court improperly applied a de minimis standard to the nature and extent of Desmond Lewis' injuries rather than examining the nature and extent of the force used by Corporal Chris Bordelon. In doing so, the District Court failed to properly analyze whether Corporal Bordelon used unreasonable and excessive force in violation of the Fourth Amendment when he repeatedly struck Mr. Lewis while he was handcuffed. Viewing the evidence in the light most favorable to Mr. Lewis, as the court was required to do its summary judgment, Mr. Lewis was not resisting, and all of the factors under Graham v. Connor weighed in his favor. As such, the force used by Corporal Bordelon was unreasonable, excessive, and in violation of clearly established law within the Fifth Circuit. Therefore, the injuries Mr. Lewis suffered necessarily exceed the de minimis threshold and are constitutionally cognizable. Now, in order to properly evaluate these claims, we have to look at two Supreme Court cases, Hudson v. McMillian and Graham v. Connor. Hudson, Your Honors, was an excessive force case arising under the Eighth Amendment's Cruel and Unusual Punishment Clause. In that case, the court explicitly stated that there was no severity requirement as it related to an excessive force claim. Rather, they had to look at the context in which the force was deployed and then analyze whether or not the injury arose from constitutional or unconstitutional uses of force. Now, this circuit made this exact point and carried the holding in Hudson over to the Fourth Amendment jurisprudence in Fourth Amendment excessive force cases, saying that the amount of injury required to prevail is directly related to the amount of force that is constitutionally permissible under the circumstances. And as recently as the case of Sam v. Richard, this court held that there's only one inquiry when it comes to an excessive force case, and that's whether or not the officer's use of force was reasonable. Any injury that's presented, even insignificant or purely psychological injuries, will prove constitutionally cognizable so long as it arises from excessive force. That does seem reasonable to me as the description of the law. Regardless, we have Bortle on here admitting that he punches him three times in the face. Correct. So it's hard to me to imagine that wouldn't suffice as an injury. So it then just does reduce to the numerous video, audio, all of that stuff here show that your client was resisting. That's what it comes down to, because under cases like Griggs, if he is resisting arrest, they can use force to subdue him, right? Absolutely, Your Honor. And I'm glad you brought up Griggs because I wanted to address that case. It's the one case cited to by the appellees, actually written by Your Honor, Judge Jolly. It was written by Your Honor. But in that case, it's important to note that all three of the factors under Graham weighed in the officer's favor. There you had a severe crime of a driving under the influence. You had a threat in the fact that that individual was, I believe the term used was persistently resisting. And you also had an undisputed fact that the arrestee actually kicked the officer. Here, that's a disputed fact. There's only one person in this case that says that Desmond Lewis kicked Corporal Bordelon, and that's Corporal Bordelon. There were five other officers on the scene that day. None of them saw that. Desmond Lewis disputes that fact. So Griggs is distinguishable on the facts in the sense that all of the Graham factors weighed in the officer's favor. And, Your Honors, in that case, I would agree that the ultimate conclusion there, that the officer was permitted to use some force to effectuate the arrest, was proper. But it's not. Going back to the facts of this case, at what point in the encounter was he handcuffed? Very early on, Your Honor. I don't know the exact time stamp from the video, but he was handcuffed, and then for about a minute he was sitting on the steps of the apartment complex. After he was handcuffed? After he was handcuffed, he was sitting there for a minute, and that's when Corporal Bordelon and Corporal Owen arrived on the scene, and they acknowledged, first of all, that it wasn't the armed robbery suspect that they thought he was. Everyone at the scene acknowledged that. What followed was they stood Desmond Lewis up, they began walking into the vehicle, and there were a couple of statements actually made by the officers, and pardon my language, but the statements were, I'm going to knock your motherfucking teeth out, and if you move again, I'm going to F you up. At some point, though, they said, this is not the man, but I'm going to arrest him for running away from the officers. Correct, Your Honor. So that's the crime that Mr. Lewis committed. All right. Now, and did they, well, I'm trying to get, at what point did they handcuff him after they told him, you're under arrest for resisting or for, what, you're dating officers or running away from them? So what happened was Desmond Lewis had fled two individuals that he later found out were police officers. He got to the apartment, he was then handcuffed and arrested, and he was sitting there. It was then acknowledged about a minute, minute and 20 seconds after that, that he was not the armed robbery suspect. Okay. And he was handcuffed behind him or in front of him? Behind his back. Behind his back. Behind his back. Okay. And so because we have to look at the injury here in light of and in the context of the force that was used, we do have to analyze the gram factors in this case. And so the crime that we're talking about here, fleeing the officers or resisting arrest by ignoring verbal commands, not physically resisting but ignoring verbal commands, this court previously had occasion to visit that exact crime in Bone v. Dunaway. And in that case, the court held that that crime was of minimal severity because all the individual had done was walk away, possibly bumping the officer. And so that factor weighed in the arrestee, the plaintiff's favor in that case. And in this case, when you look at the remaining factors, also in the light most favorable to Mr. Lewis, they all weigh in his favor. Mr. Lewis maintains that he was not a threat. Six out of six officers maintain that Mr. Lewis never verbally threatened them in any way. Did he exhibit any of his bizarre behavior that would indicate that he was not mentally stable at any time? Did they recognize that? I believe they did, Your Honor. At some point, I think he had mentioned to the officers that he was on the way to get his psych medication when he was arrested. He was loud, admittedly. I believe the district court termed it as chaotic. But the reality is, Your Honor, he was being escorted to the vehicle by two officers, Corporal Bordelon and Officer Hayes. At one point, Officer Hayes backs away, and Corporal Owen, who was actually Corporal Bordelon's partner, admitted, first of all, that he felt more threatened by the crowd that had formed than he did of Mr. Lewis. But on top of that, he also stated, and I'm going to look for the exact site, page 1859 of the record, he stated that Corporal Bordelon was not in harm's way. So taking all of that into account, no other officer on the scene felt threatened by Desmond Lewis in any way. And so if we take that along with Mr. Lewis's statements, viewing the evidence in light most favorable to him, the second factor also weighs in his favor. But the third alone could stand. In other words, if there's undisputed evidence that he resisted arrest, and just so you can address it most forcibly, I think what they'll stand up and say is, well, it's undisputed when they told him to come, he ran, number one. Number two, it's undisputed when Hayes confronts him. Instead of getting down, Hayes has to take him down. Then he gets cuffed, and I think you could, maybe they'll argue that the Hayes audio will say it's also undisputed that they keep saying stop pulling away. And he never says I'm not pulling away. There is colorful language. And then the final point they point to as to an undisputed fact as to resisting arrest would be he admits he didn't just get in the car. So I'll address each of those, Your Honor. First of all, with regards to the running, I don't think that even in this situation, the fact that he ran from the officers does not give them carte blanche to use force. And the reason being is that there was a minute then in front of Officer Hayes in which he was fully compliant. Officer Hayes did take him down, and we're not alleging there that the force used by Officer Hayes was unreasonable. He had to effectuate the arrest.  What happened? What happened that required his being taken down? So he had approached the officer, initially asking the officer for help. He didn't know that the two individuals chasing him were police officers, so he saw a police officer. He came at him. He put his hands up. And then in the audio you hear him at one point say, oh, God, please no. And it's Officer Hayes' testimony that he had pulled out a taser saying get on the ground. At that point, he eventually did get on the ground. There was a brief struggle where Officer Hayes had to get his hands behind his back. But he did eventually effectuate the arrest. He did handcuff him. And then he was compliant for over a minute until Corporal Bordelon and Corporal Owen came onto the scene, basically repeatedly yelling at him, you're going to jail, you're going to jail. And at that point, though, that's when they begin bringing him to the vehicle. Now, as it relates to the, I believe the next point was when he was cuffed. Once he was handcuffed and walking to the vehicle, you had officers repeatedly. And would you say that's where we start the analysis? I think so, Your Honors, because the force wasn't actually deployed until Desmond Lewis was in the police vehicle. So he was in the police vehicle, and that's when the baton strikes happened, his rectum was prodded, and he was punched in the face repeatedly. So not to say that the other parts are irrelevant, but when we're looking at the context in which the force was deployed, I would say that it starts over once Mr. Lewis is compliant on the scene. He stood up, he begins walking to the car, he hears these threats from the officer, and admittedly there may have been some verbal resistance. Corporal Tong, in his deposition, actually stated that Mr. Lewis was a passive resister, meaning that he may have been verbally noncompliant, he may have been acting as dead weight, but under this court's precedent, whether an individual is passively or not resisting at all, you still can't use force against them. You have to use reasonable force, and in this case what we're talking about are strikes to the face. Help me out on that when you say this court's precedent, because I'm apprehensive if we get into the world of resistance and passive resistance. What case is most helpful in that regard? So, Your Honor, there's a couple of cases. Brown v. Lynch, Bush v. Strain, Anderson v. McCaleb, Newman v. Gedry. They all explore the difference. An actively resisting person can be forcibly subdued, but a passively verbal resistant cannot be? So if an individual is not actively resisting, I believe it was from, it was actually cited in Darden, citing back to those cases, stating that the court's precedent is if an individual is not actively resisting or fleeing, that the use of force, such as repeated strikes to the body, are unreasonable. We have to credit the audio that says he's pulling away? Well, no, Your Honors, we don't, and there's a couple reasons why. First and foremost, when the officers say he's pulling away, that's as they're walking to the vehicle. So as he's walking to the vehicle, there wasn't any force actually deployed at that point. And whether he was jerking away one way or the other, I still don't think that counsels the use of force later on that we're talking about. And even if it did, we're still talking about an incident completely outside of that realm, which is the prodding of Mr. Lewis's rectum with a baton. That occurred after he was in the car, is that correct? That's correct. So, I mean, the way it would appear to me from the facts, I mean, that you seem to acknowledge, is that he's resistant, passive resistance means I'm not moving. Correct. And so they had to force him into the car. That's correct. And so I want to get to what happens inside the car, because what happens is— So we force him inside the car. At that point, there's no unreasonable force at that point? At that point, no, Your Honor, there isn't. So once he gets into the vehicle, there hasn't been any unreasonable force. They're effectuating the arrest. He gets into the vehicle, and that's when it starts. So what the testimony is is that Mr. Lewis gets pushed face first, handcuffed, onto the floor of a vehicle. And at that point, Corporal Bordelon delivers, I believe it's five strikes to his legs with a baton. His legs are hanging out of the car. That's correct, Your Honor. He's saying get into the car, and he's hitting his legs, saying get those legs in the car. Right, but he wasn't physically able to because he was trapped on the floor of the vehicle. He was attempting to comply. And one of the points the appellees make in their brief is that his legs were squirming. Well, in that position, of course they're squirming because he's in a position where he can't move. It's a damned if you do, damned if you don't. Either he's trying to comply by getting in the vehicle by moving, or he's not moving and he's not complying. So the first act of unreasonable force is when he hits his legs? It is when he hits his legs, correct. Once he's in the vehicle, handcuffed. His rear end and legs are still out of the car. They're partially out of the vehicle, yes, Your Honor. And the video shows that? The video doesn't show any of the actual force used. What the video ends up showing is Mr. Lewis. I believe my time is up, Your Honor. May I answer your question? Yes. Okay. What the video shows is shortly after all of the force is deployed, Mr. Lewis on the floor of the vehicle, not resisting. And the officer is still screaming at him to get in the car despite, even once the door closes, they're still yelling at him to get in the car. And that's one more piece of evidence why we don't necessarily need to credit the statements before about stop resisting as being gospel truth. Because what this evidence shows once he's in the car is they're still yelling at him to get in the car. It's not the truth that just because they're saying it that he actually is resisting. I think we've answered the question. Thank you, Your Honor. We have time on rebuttal. Thank you. Thank you. Why was it not excessive force to hit his legs as he entered the car? Yes, Your Honor. And I'm Nicole Buckle on behalf of the appellees. It was not excessive force, Your Honor, because what the appellants are not crediting and taking from this court's jurisprudence is that the analysis is what was the officer's perception? What was the reasonable officer's perception? And in this case, Officer or Corporal Borderline reasonably perceived Mr. Lewis's actions as resistance. And I think when you take the statements of Mr. Lewis himself, and this is what the district court did, in that he was squirming in the car. He admits he even turned over. His legs were out. He says, yes, I was moving. So I think when you take those statements, the appellees in their brief cited several cases. Do you admit that we have to accept that he was on the floor? On the floor? Of the car? Of the automobile? No, Your Honor. Where was he? On the seat? He was on the seat. You say he was on the seat of the car? Yes. Not sitting on the seat. No, his upper body, torso, was inside the car, and then his legs were outside of the vehicle. And he was partially reclining on the seat, not sitting up. Correct, Your Honor. And he was hitting his legs at that point. Yes, Your Honor. But first, Corporal Bordelon, he actually tried to reach down and pick up Mr. Lewis's legs and push him in the car. That's when Mr. Lewis started kicking, or which Mr. Lewis acknowledges he was moving. So Corporal Bordelon didn't immediately take out his baton and start striking his legs. He first tried to pick up his legs and help push him into the car. He hit him in the face. After he struck him with the baton. So he puts his baton down. Yes, Your Honor. And he hasn't gotten him in. He just punches him. He must have gotten in the car to hit his face. He had to lean over Mr. Lewis to avoid being kicked. He's punching him because he says he was kicked. Correct. But they dispute that he was kicked, and there's no video that shows he does. So if that's essential to justifying the punches to the face, that's not something that could be resolved at summary judgment. I disagree, Your Honor. I think based on Mr. Lewis's statements that he was squirming and moving, that when you look at Corporal Bordelon's perception that he was actively resisting, then I think summary judgment is absolutely proper. And I think this is the exact—I mean, if you look at the facts in Griggs, which was written by Judge Jolly, I think especially when you get to the part where both suspects were in the vehicle, both were kicking or believed to be kicking. Both were handcuffed. And that is—I mean, the language in that case specifically says the inquiry is not whether the suspect was actually resisting, but it's the perception of the officer. And here, I mean, if you listen to the audio, I mean, from the very moment that it begins all the way until Mr. Lewis is taken to the hospital, he is not short of words. And, I mean, he's clearly very excited, very agitated. Why are you doing this to me? Why are you doing this to me? I've done nothing. Correct. But he's saying, I've done nothing. He's trying to ask them why he's being arrested. When he's making those statements, it begins as soon as—if you listen to the audio, it's clear that those statements begin when Corporal Bordelon tells him to stand up, and they try to begin escorting him to the vehicle. I thought in the car he was still saying, screaming. I hadn't listened to him. He's screaming throughout the entire audio. But why wouldn't you scream if it's acknowledged he wasn't the suspect? I mean, he doesn't want to get arrested and jailed for something that they've now said he didn't do. He was being arrested for the offense of resisting an officer, which the district court found was a lawful arrest, and the appellants have not challenged. This was a lawful arrest. He had committed the offense of resisting an officer. Were the two officers that beckoned him over, were they in a marked car and with uniforms? It was a Navy vehicle, but it had a City of Shreveport, Shreveport Police Department emblem on the side. Both of the officers had vests with police written in bold letters across the chest and on the back, down their sleeves, and the officer that was in the passenger seat that beckoned for him also had on a baseball cap that said police. Do you agree that the video, which is Tong's? Yes. It starts after any of the alleged resistance? I agree with that. Okay. So we are reliant on the Hayes audio to confirm that he was resisting? I think we're relying on not just the Hayes video, which, as you indicated earlier, the whole time you can hear Corporal Bordelon stop resisting, stop pulling away, and I think that's important because it shows his perception in the moment that Mr. Lewis is actively trying to pull away. But a police officer could say that, right? It doesn't establish it as a certainty. I think it establishes his perception, absolutely. But I think we have to go back to Mr. Lewis's testimony. He acknowledges he was moving around. But moving around isn't kicking. So I guess my just seems like he is cuffed at a certain point. Yes, Your Honor. Then what happens next on the only thing that we have that's irrefutable, the audio has the police officer saying, stop pulling around or I will fuck you up. And then the audio definitely has him groaning and yelling in pain. So this is a man that's been cuffed, and they've gotten him to the car. It may even be they have to hit his legs to get the long legs in the car. But why then strike the handcuffed man who's in the car in the face three times? What's the case? You think Griggs is the case that says it's not clearly excessive when you've got a cuffed individual who wasn't the original suspect? Absolutely. And Griggs acknowledges that even though the suspect may be handcuffed, that he's not necessarily restrained and subdued. I mean, the facts of Griggs, when you look at Griggs, the plaintiff and Griggs being in the vehicle and his actions are substantially similar, if not virtually identical, to what we have with Mr. Lewis. And, I mean, the case clearly says that he is still a threat. I mean, I thought in Griggs it was admitted he was kicking. He didn't kick. And here, I mean, that's disputed. Your Honor, I disagree with that in that if you read Mr. Lewis' testimony, he doesn't specifically deny kicking. Instead, he just acknowledges over and over that he's squirming, he's moving, that of course my legs were moving. But he never denies kicking. And so I think that you do have to look from the officer's perception. No other witnesses saw it, apparently. No other witnesses saw the officer getting kicked. The officers were on the other side of the vehicle. There was no one in a position to see. Except Bordelon. Correct. And Lewis. So, I mean, the officer's, Bordelon's position is that he was kicking and that he jumped in on top of him in the car and began to pummel his face? How does he explain that? Yes, Your Honor. So as Mr. Lewis acknowledges, he didn't just get in the car. I think the testimony or his words were, I didn't get in the car like a normalized or normal civilized person. So he was not in the vehicle. Corporal Bordelon testified that he reached down and tried to grab his legs to help put his legs into the vehicle. That's when Corporal Bordelon testified that Mr. Lewis started kicking. At that point, he pulled his baton and struck his legs, just as he's taught to do in the academy. That did not work. He testified that Mr. Lewis continued kicking, so he put the baton up, moved into the vehicle on top of Mr. Lewis so that he could no longer be kicked, and delivered three strikes to his face. Is that the conduct that is instructed in the manual as to the next step if they do not cease kicking? Is there any instructions about that? There's no specific instructions, Your Honor. It's all about what's the totality of the circumstances. It certainly is proper as it's one of the next levels on the use of force continuum. They didn't proceed to a taser. They didn't proceed to less lethal weapons. Why is hitting him in the face actually accomplishing anything? The goal of getting him into the vehicle, seated, so he can be transported to jail. Your Honor, I think the goal of these are called distraction strikes for a reason. Because that goal was accomplished, he delivered the strikes. Mr. Lewis was distracted long enough to stop kicking and to stop the physical resistance that Corporal Owen was able to pull him from the other side, and they were able to shut the doors. Okay, but when they hit him in the face, did his resistance at that point stop? What is the record show about that? Actually, if you read Mr. Lewis's deposition, and I can provide the site at a later date, but he actually says, I gave up. After he got hit in the face, he gave up? Yes. Is that correct when I tell me? I'm being precise about this. He got hit in the face, and you said, what did you do after you got hit in the face? Well, I gave up. Is that more or less what he said? His testimony was, I gave up. And he explained that he was trying to stop professing his innocence, but if you listen to the audio, he never did that. That continued on the entire time. What connotations do we take from I gave up? That would seem to indicate I was fighting and resisting, but at that point I gave up. Absolutely. I no longer resisted. Absolutely. Is that the takeaway that we should make? Absolutely. I think when you read the testimony, that's absolutely a reasonable connotation, interpretation of his testimony. So the rule of law you say we already have established in Griggs, is if an arrestee admits that they're squirming as they're being put into a vehicle, police officers, it is always reasonable for a police officer to give what you call a distracting blow. That's what you're saying. I'm saying that the proper inquiry under this court's jurisprudence is what does a reasonable officer perceive? And if a reasonable officer perceives that the suspect is noncompliant or resisting, that at that point the officer may use reasonable force. All of the cases cited by reasonable force. I wonder how we say this is a reasonable officer. I'll bust your teeth out before anything really begins to happen. It doesn't sound like a very reasonable officer to me. And if Corporal Bordelon explained that in his deposition, that when you patrol in certain areas that certain suspects use certain language and that it certainly was not a literal term. I'm excluding his expletives. I'm just saying the fact that he threatened to hit him in the face and mess him up, as I understood the sequence of events, was before he really began to actively resist arrest in a physical kind of way. Your Honor, I think that you spoke to this in Griggs. In that case you said that this may not be the model conduct that we expect or want from our officers, but this is what the qualified immunity standard is there for. This is the exact type of situation that exists to extend qualified immunity to officers. And so I think under the Griggs analysis that summary judgment— Did they have the wrong suspect in Griggs too? Well, I would disagree with the conclusion that it was the wrong suspect. No, I thought they both admitted this isn't the guy we— This wasn't the guy for the burglary, but they were making a lawful arrest. That he was being arrested for resisting from the original flight. For running. Correct, Your Honor. But that is an offense under Louisiana state law, and that was a lawful arrest. So I— Did they make clear to him that that was what they were arresting for, and that he was not being arrested as a suspect for a greater crime? Yes, Your Honor. You can hear the officer tell him why he's being arrested. Foolish of me. I live in Louisiana. So if a police officer's coming at me and I see him and turn to run the other way, that's a probable cause to arrest me? If they have a reason to stop you. Well, what reason did they have to stop him? They had reasonable suspicion to believe that he was the burglary suspect. So they had— I'm sorry. I don't— Where is the reasonable suspicion that this man, just because he was black on that trail, that's reasonable suspicion? What else did they know about him? Well, they—this goes to they had a suspicion to stop in question to either— It's not reasonable suspicion. It's suspicion. Suspicion to stop him in question so that they could either— That gets back to my—so if they're coming at— if I'm walking down the sidewalk and they're walking towards me and I turn and run, that's suspicion under Louisiana law to arrest me? With the facts that they had— What are the facts? I'm asking you what facts beyond the ones I've just given you. They knew that the burglary suspect was in that apartment complex. They spoke to the manager. The manager said—Mr. Benjamin, I believe his name was—he just walked down that trail. They were looking around the apartment complex, could see no one on the trail, drove over to the other side, and Mr. Lewis was the only person on the trail. And the manager had just told them that the suspect had just gone that way. This wasn't a situation where he's walking down the street and they pick him. He's one out of ten. He was the only one. Then they motioned him to come there. And he immediately fled. When they—I want to talk to you. And they motioned him and he fled. Correct, Your Honor. None of the argument you've made now has been the de minimis injury. Are you in agreement with opposing counsel's characterization that if he gets stuck three times in the face, that's enough injury to be cognizable? It all depends on was the force justified. No, I absolutely agree that it all depends on the force. But I think when you read all of the cases that there is a distinction between— on the de minimis standard, between compliant suspects and noncompliant suspects, and that is whether the officer perceived the suspect to be compliant. One thing in this case that gives me more concern is the prodding of his rectum. Thank you, Your Honor. In which there seems to be some credible evidence and disputed evidence about that. I'm glad you asked that, Your Honor. And it seems to me that that is the kind of conduct that is never justifiable. Your Honor, I certainly would not submit to this court or to any court that that conduct would be justifiable. I think that this is a situation where there is absolutely no evidence that was presented to substantiate Mr. Lewis's allegations. Interestingly, in an appellant's brief, they said that Mr. Lewis was not required to allege that he was bleeding. But that's exactly what he did. When you go back to his— He said to his mother or his grandmother that, you know, they have poked me in the rectum. And she—and, like, out of the blue, did she confirm it? She said, he told me that, I guess. But he screamed that out. They poked me in the rectum. No, he did not scream it out. And that is an important—that is a misrepresentation that was made by appellants. Because, one, if you listen to the audio, you can hear the entire conversation. Even when he is pulled from the patrol vehicle and being examined by Captain Smith and the other EMS, you can hear the entire conversation. There is nothing—there is no moment that it goes quiet or it's muffled. You can hear Mr. Lewis's words. And also, the mother— And he never mentioned that? He never mentioned they poked me in the rectum? No, Your Honor. It was never mentioned. And, as I said earlier, Mr. Lewis was not short of words. And when did that accusation first come to light? Once he took his deposition? Or did he make that charge earlier? Mr. Lewis acknowledges that he never told anyone until later on when he was at Caddo Correctional Center. This is after he was— But I thought the audio has him alleging that it's—he's saying, take it out. No, Your Honor. And if you listen to the audio, it absolutely does not say take it out. And I don't believe it's a matter of interpretation. When you listen, it clearly says—he clearly says, y'all check it out, it wasn't me. And this is from the very beginning. In the next sentence, he says, take it out. No, I— He said, check first, and then he said take. He says, y'all check it out. And if you listen to the audio, you can realize that it's as he's being escorted to the vehicle. It never says take it out, and that wasn't even alleged at the trial level that that statement was made. When did he say he was bleeding? When did he say he was bleeding? Yeah. The— The first time he made the allegation. In the complaint. Or I guess he made it after he was at Caddo Correctional Center, and he made that complaint to his grandmother. But interesting, his mother—his mother did not say that she heard the statement while he was at Huntington High School. If you read her deposition, she says that when Desmond called, he told us about it, and that was when he first called from jail. And even more important, Ms. Lewis, the mother, testified that she was actually present and saw the officers put Mr. Lewis in the back of the vehicle. And she never testified that she saw this prodding with the baton, and she was present, no other—despite all the witnesses that were there. Mr. Lewis said he was prodding, and he said he was not—he was not a girl. He was not—he didn't like people prodding him in his— He said the baton was between his buttocks. He did allege that, and he also alleged that he was bleeding profusely. And when you look at the video, that is refuted. But—and, Your Honor, although he made the allegation, it's simply impossible. When you look at the weapon that supposedly was—his allegation was forcefully inserted into his rectum. And Captain Smith's testimony that had that occurred, there would have been excessive bleeding. And there's no medical evidence, no test—the only medical treatment he received was for lacerations on his hands. And that happened when—before he ever came into contact with the officers. So I think when you look at the nature of his allegation and what he's claiming happened, and the complete absence of any cooperating evidence, that it's simply implausible, and that this Court should absolutely affirm summary judgment. Didn't he groan as if he were in terrible pain? Your Honor, he was groaning before the alleged force even happened—before the initial force even happened. I thought it was at the time he still had his rear end out of the car, and Orlon was pushing him and possibly prodding him with his baton. He was yelling and groaning from before, during, and after. Okay. If there are no other questions. Thank you. Your Honor, there's a few points I'd like to make immediately. I'd like to direct the Court's attention to the case of Brown v. Lynch, where the opposing counsel is the same counsel across from me. In this case, also in front of Judge Hicks, what the Court found, despite video and audio evidence of an officer saying, stop resisting, stop resisting, there was still a factual dispute that precluded the granting of summary judgment. In that case, the plaintiff admitted— repeatedly—that his hands were behind his back, and that the officer continued to strike him anyways, and the audio and video actually disputed what the officer said. So right off the bat, I'd like to get that out of the way. So you're just telling us Brown is the case right on point for you? I think Brown is definitely one of the cases directly on point, as well as Bone v. Dunaway and Sam v. Richard, absolutely, and Darden v. City of Fort Worth. And one of your honors, I don't recall which one, had it pointed out, what a reasonable officer perceives on the scene is a fact question. It's an objective inquiry, not a subjective inquiry. And there were multiple officers on the scene here who saw what was going on. None of them used the force that Corporal Bortolon did, and we don't have to take for granted that Corporal Bortolon was a reasonable officer. It's just as reasonable to assume that in this situation, the strikes that he delivered to Desmond Lewis were retaliatory. And unlike Riggs, in that case, Your Honor, there was only one punch. There was one distractionary punch to the witness's face. In this case, there were three. And in Corporal Bortolon's testimony— What do you say about the fact that he says, I gave up? After he hit me in the face, I gave up. Your honors, the fact that he gave up means that he simply got into the vehicle. It doesn't necessarily mean that he— He hit me in the face, I gave up. I just walked down. Well, Your Honor, at that point, he was done verbally resisting. It doesn't necessarily mean that he was done physically resisting. In Corporal Bortolon's testimony in this case, what was that he, at 6'3", 225 pounds, mounted Desmond Lewis, handcuffed behind his back. How big is— Mr. Lewis was, I believe, about 5'10", 180, 190 pounds. So significantly larger than him. He mounts him and proceeds to punch him in the face three times. He hits him so hard that he exclaims, my fucking hand hurts, after it happened. In that situation, Your Honors, the force is beyond unreasonable. Do you disagree with her statement that the medical records at the hospital show only an injury to the hand? I do, because there are numerous witnesses, Your Honor. I believe it's six, and I'll count them out. Corporal Bortolon admits that his lip was bleeding, and he admits to causing it. Corporal Owen says that his lip was bleeding. Corporal Tong, in his vehicle, says, clean your lip up. That's at 18 hours, 31 minutes on the dot. He says, clean your lip up. Desmond Lewis's mother says he was spitting blood. His grandmother says he was spitting blood. And Desmond Lewis says he had an injury. So we have, unlike a lot of the cases cited to by the appellee, we actually have the defendant officer admitting to the injury here. We don't have that in a lot of the other cases. And, Your Honor, as it relates to the video confirm that there was no blood on the pants? No, the video shows excessive blood on the front of the pants. And to appellee's point about, you know, well, the initial allegation was he thought it came from his rectum. At that point, he had just gone through getting beaten. His rectum was prodded. But, frankly, he didn't know where the blood was coming from. It was more than reasonable for him to assume that if he felt a jugging-type motion, that it possibly came from his rectum, but it also came from his lip. And I also want to point out here, as it relates to the squirming, Your Honor, if an individual's rectum is prodded by a baton, it's more than reasonable to expect some kind of squirming. And it was alleged at the trial court level that he said, y'all need to take it out, it wasn't me. That was in our response brief and summary judgment. So that is also a disputed issue of fact. And there are all the statements he made after the fact that Captain Ivory heard. These aren't just self-serving statements from him and family members. Captain Ivory, a trained medical professional, heard Desmond Lewis's statements that his rectum was prodded, and she dismissed them. And she said, unconscionably, she said they were inappropriate, and she didn't believe them because she gives 911 responders the benefit of the doubt. The allegation that he never reported this is blatantly false. He did report it to Captain Ivory. She could have reported it to Captain Smith. She could have reported it to the hospital where she was transporting him, but instead she left it to Desmond Lewis to confront doctors in front of his own abusers as to what happened. And if I could just make one final point, Your Honor, in conclusion. Ultimately, in this case, an injury, and whether it transcends the de minimis standard, hinges not on its severity but on the unconstitutionality of the force that causes it. Here there are disputed issues of material fact as to whether the force was unreasonable on an individual who was not actively resisting which caused an injury, and the decision at the district court must be reversed and the case remanded for trial. Thank you very much. Thank you, sir. That's the cases we have for today. They're taken under advisement, and this court panel will adjourn until 9 a.m. tomorrow morning. Thank you.